NOTICE

Decision filed 07/08/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250383-U

NO. 5-25-0383

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 22-CF-357 |
| | ) | |
| ALEXIS STALLMAN, | ) | Honorable |
| | ) | Jeffery B. Farris, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BARBERIS delivered the judgment of the court.
Justices Vaughan and Sholar concurred in the judgment.

**ORDER**

¶ 1   *Held*:   We affirm defendant's 50-year sentence for first degree murder where the circuit court placed no weight on an aggravating factor inherent in the offense in sentencing defendant.

¶ 2   Defendant, Alexis Stallman, entered an *Alford* plea[1] to one count of first degree murder, and the Jackson County circuit court sentenced her to 50 years in prison. Defendant filed motions to withdraw her guilty plea and to reconsider her sentence, both of which the court denied. Defendant appeals, arguing that the court considered an aggravating factor that was inherent in the offense of first degree murder in imposing her sentence. For the following reasons, we affirm.

_____

[1]In an *Alford* plea, a defendant enters a guilty plea while maintaining his or her innocence. See *North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970).

1

¶ 3                              I. Background

¶ 4      On October 16, 2023, defendant entered an open *Alford* plea to one count of first degree murder. The factual basis presented at the plea hearing indicated that on July 20, 2022, defendant's husband, Edward Stallman, was found injured inside of his crashed vehicle in Murphysboro, Illinois. Mr. Stallman later died from his injuries. Further investigation revealed that defendant suffered a puncture wound to the chest that was inconsistent with the nature of the crash. Law enforcement subsequently searched defendant's vehicle located near the crash site and discovered a long kitchen knife in her purse. DNA testing was conducted on a blood sample taken from the knife, and Mr. Stallman could not be excluded as the contributor. Shortly before Mr. Stallman's death, defendant and Mr. Stallman had engaged in a "heated argument" near the crash site. After the State presented the factual basis, the circuit court accepted defendant's *Alford* plea.

¶ 5      On January 17, 2024, the circuit court held a sentencing hearing. Testimony presented at the hearing revealed that defendant was upset following a court hearing regarding custody of the daughter she shared with Mr. Stallman. The court had reduced defendant's parenting time and awarded Mr. Stallman all decision-making authority for their child. The court had also denied defendant's request for a continuance. Defendant felt that she had been treated unfairly. Defendant called and texted her boyfriend following the hearing. Defendant was extremely upset and indicated to her boyfriend that she was going to kill Mr. Stallman. Defendant and Mr. Stallman were involved in an argument at Mr. Stallman's place of work. Defendant stabbed Mr. Stallman in the chest while he was in his vehicle. Mr. Stallman crashed his vehicle shortly thereafter. Mr. Stallman was transported to the hospital where he died from his injuries. A knife and knife sharpener were found in defendant's purse near the location of the crash. Photographs of Mr. Stallman's vehicle depicted large amounts of blood covering the cab area. Victim impact

2

statements prepared by Mr. Stallman's family members expressed the grief, anger, and effect Mr. Stallman's death had on their lives.

¶ 6     The State argued that several factors in aggravation applied. In so arguing, the State stated, "Factors in aggravation, I want to say, of course, 1 [the defendant's conduct caused or threatened serious harm] is included in this heinous crime, first degree murder." The State went on to state, "But, I'll put all of my cards on aggravating factors number 7, that this sentence is necessary to deter others, other offenses like this." The State indicated that it would not recommend the maximum sentence because defendant had no criminal history. The State, instead, recommended that defendant serve 52 years in prison.

¶ 7     Defense counsel asserted that multiple factors in mitigation applied. Defense counsel noted that defendant had no criminal history; her conduct was the result of circumstances unlikely to recur; her character and attitude indicated that she was unlikely to commit another crime; she suffered from serious mental illness, and her child's well-being would be negatively affected by her absence. Defendant made a statement in allocution, in which she indicated that she did not remember killing Mr. Stallman.

¶ 8     After considering the arguments by the parties, the circuit court noted that it considered the presentence investigation report. The court noted that defendant had "developed a pattern of self-victimization and manipulation." The court elaborated, "Self-victimization and then making that into manipulation of others in order to achieve your will." The court then provided a detailed discussion of the factors in mitigation. The court began by stating, "I can't find that number one, 'The defendant's conduct neither caused nor threatened serious physical harm to another.' " The court proceeded to address each factor, indicating whether or not each factor applied. The court stated that it considered defendant's lack of criminal history as a mitigating factor. The court

indicated that it wanted "to find the defendant's criminal conduct was a result of circumstances unlikely to recur, but I guess technically they could recur, and I don't know if the way your pattern of behavior hasn't changed that it wouldn't under different circumstances." The court also suggested that defendant's mental health was a mitigating factor and considered that defendant had a child.

¶ 9    The circuit court then stated, "Turning now to the factors in aggravation, number one, threatened or caused serious harm. Defendant did not receive compensation. The defendant does not have a prior or much prior history of delinquency or criminal history." The court continued to address each of the aggravating factors, noting that the sentence it would impose was "necessary for others, to deter others from committing the same type of crime, and it's the type of crime." The court explained that it was referring to violence in divorce cases.

¶ 10    After reviewing the factors in mitigation and aggravation, the circuit court stated, "Those are the factors in aggravation and mitigation that I'm finding here." The court ultimately sentenced defendant to 50 years, which was 10 years below the maximum sentence.

¶ 11    On February 26, 2024, defendant filed *pro se* motions to reconsider and to withdraw her guilty plea. The court subsequently appointed new counsel to represent defendant. Newly appointed counsel filed amended motions to reconsider sentence and to withdraw guilty plea. The amended motion to reconsider sentence asserted that the circuit court considered an aggravating factor that was inherent in the offense of first degree murder in imposing its sentence.

¶ 12    On May 2, 2025, the circuit court held a hearing on the amended motions. After considering the arguments by the parties, the court denied both of defendant's motions. In doing so, the court rejected defendant's argument that the court erred by considering the aggravating factor that defendant's conduct caused or threatened serious harm in imposing its sentencing. The court

4

explained, "So I am not using Factor No 1 that you are talking about to add another ten years to the sentence. I am just, you know, I am considering that by saying it, speaking it into the record as part of the total, part of the factors in aggravation and mitigation." The court went on to state, "I do not believe in this case that I used that No. 1 in order to determine what the sentence should be." This appeal followed.

¶ 13                                    II. Analysis

¶ 14     On appeal, defendant argues that this court should vacate her 50-year sentence and remand for resentencing, where the circuit court considered an aggravating factor that was inherent in the offense of first degree murder in determining her sentence. Specifically, defendant argues that the court considered the aggravating factor that her conduct threatened or caused serious harm.

¶ 15     The State responds that defendant forfeited review of the issue by failing to object at the sentencing hearing. Defendant acknowledges that she failed to object at the sentencing hearing, and that ordinarily a defendant is required to both contemporaneously object and raise the issue in a posttrial motion to preserve an issue for review. See *People v. Hillier*, 237 Ill. 2d 539, 544 (2010) (to preserve a claim of sentencing error, the defendant must ordinarily object at the sentencing hearing and raise the objection in a postsentencing motion). Defendant maintains, however, that she preserved the issue in this case by raising it in her written motion to reconsider sentence. See *People v. Saldivar*, 113 Ill. 2d 256, 266 (1986) ("To preserve any error of the court made at [sentencing], it was not necessary for counsel to interrupt the judge and point out that he was considering wrong factors in aggravation."). Defendant alternatively argues that this court may review this issue under the first prong of the plain-error doctrine. We find it unnecessary to resolve the parties' dispute of whether the issue was preserved for review in this case because the circuit court did not err in sentencing defendant in this case. See *People v. Piatkowski*, 225 Ill. 2d 551,

564-65 (2007) (noting that the first step in a plain-error analysis is to determine whether a plain error occurred); see also *People v. Johnson*, 218 Ill. 2d 125, 139 (2005) (noting that "there can be no plain error if there is no error.").

¶ 16   "It is axiomatic that a trial judge, when issuing a sentence, must not consider as an aggravating factor an element that is inherent in the crime for which the defendant is being sentenced." *People v. Brown*, 2019 IL App (5th) 160329, ¶ 18 (citing *People v. O'Toole*, 226 Ill. App. 3d 974, 992 (1992)). "Nevertheless, the trial judge 'need not unrealistically avoid any mention of such inherent factors, treating them as if they did not exist.' " *Id.* (quoting *O'Toole*, 226 Ill. App. 3d at 992). "When we review a sentence for an alleged error based upon the consideration of an improper factor in aggravation, we consider the record as a whole and do not focus merely on a few words or statements from the trial judge." *Id.* (citing *People v. Reed*, 376 Ill. App. 3d 121, 128 (2007)). " 'An isolated remark made in passing, even though improper, does not necessarily require that [the] defendant be resentenced.' " *Reed*, 376 Ill. App. 3d at 128 (quoting *People v. Fort*, 229 Ill. App. 3d 336, 340 (1992)). "To be entitled to a remand for resentencing, a defendant who has alleged error must show more than the mere mentioning of the improper factor in aggravation: the defendant bears the burden of showing that the trial judge relied upon the improper factor in fashioning the defendant's sentence." *Brown*, 2019 IL App (5th) 160329, ¶ 18 (citing *Reed*, 376 Ill. App. 3d at 128). "[A] sentence based on an improper factor may be affirmed where the reviewing court can determine from the record that the weight the trial judge placed on the improperly considered factor in aggravation 'was so insignificant it resulted in no increase in the defendant's sentence.' " *Id.* ¶ 19 (quoting *People v. Whitney*, 297 Ill. App. 3d 965, 971 (1998)).

6

¶ 17    In this case, defendant contends that the circuit court improperly considered that her conduct threatened or caused serious harm (730 ILCS 5/5-5-3.2(a)(1) (West 2024)), a factor inherent in the offense of first degree murder. In support of her contention, defendant primarily relies on the following isolated statement made by the court at sentencing: "Turning now to the factors in aggravation, number one, threatened or caused serious harm." Defendant also points out that the court, after considering the factors in aggravation and mitigation, stated, "Those are the factors in aggravation and mitigation that I'm finding here." After carefully considering the record as a whole, however, we conclude that the court did not rely on this factor in determining defendant's sentence.

¶ 18    We initially note that at the sentencing hearing, the State acknowledged that this factor did not apply, where it stated, "[f]actors in aggravation, I want to say, of course, 1 [the defendant's conduct caused or threatened serious harm] is included in this heinous crime, first degree murder." The State went on to argue that a 52-year prison sentence was necessary to deter others from committing similar crimes.

¶ 19    After considering the parties' arguments at sentencing, the circuit court carefully reviewed the mitigating and aggravating factors, as though it was reading directly from the statute. For example, in addressing the mitigating factors, the court began by stating, "I can't find that number one, 'The defendant's conduct neither caused nor threatened serious physical harm to another.' " The court then proceeded to address the mitigating factors listed in the statute, indicating whether each factor applied. Similarly, the court reviewed nine aggravating factors set forth in the statute. In doing so, the court stated, "Turning now to the factors in aggravation, number one, threatened or caused serious harm. Defendant did not receive compensation. The defendant does not have a prior or much prior history of delinquency or criminal history." The court's statements mirror the

7

statute setting forth the factors in aggravation, which lists, *inter alia*, the following: "(1) the defendant's conduct caused or threatened serious harm;" (2) "the defendant received compensation for committing the offense;" and "(3) the defendant has a history of prior delinquency or criminal activity." *Id.* § 5-5-3.2(a)(1-3). The court continued to address each of the aggravating factors, specifically noting that the sentence it would impose was "necessary for others, to deter others from committing the same type of crime, and it's the type of crime." See *Id.* § 5-5-3.2(a)(7). The record indicates that when the court referenced the first factor—that defendant's conduct threatened or caused serious harm—the court appeared to be reading from the statute. While the court specifically stated that defendant did not receive compensation and did not have a prior criminal history, the court did not state that it found *defendant's conduct* threatened or caused serious harm to *the victim*. The court's passing reference to this factor at sentencing does not demonstrate that it placed any weight on this factor in sentencing defendant. The court confirmed this at the hearing on the motion to reconsider sentence when it clarified that it referenced, or considered, the first aggravating factor but did not believe it utilized that factor in determining defendant's sentence. Thus, after reviewing the record as a whole, we conclude that the court did not place any weight on this factor in imposing defendant's 50-year sentence—a sentence 10 years below the maximum sentence for first degree murder.

¶ 20                                III. Conclusion

¶ 21    For the foregoing reasons, we affirm the judgment of the circuit court of Jackson County.

¶ 22    Affirmed.

8